IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACOB D. VOGEL,

                              Petitioner,

    v.                                                                OPINION and ORDER

LIZZIE TEGELS,                                               23-cv-723-jdp

                              Respondent.

---

      Petitioner Jacob D. Vogel, represented by counsel, seeks relief under 28 U.S.C. § 2254 following his convictions for one count of first-degree sexual assault of a child under the age of thirteen and one count of child enticement in Buffalo County Case No. 16CF138. Vogel brings two due process claims, contending that he was sentenced based on materially inaccurate information and on constitutionally protected conduct. Specifically, Vogel contends that the circuit court erroneously found that he "groomed" the victim, and considered his irrelevant consensual sexual activity with adult men. For the reasons explained below, I agree with respondent that Vogel's claims are meritless. I will deny the petition.

BACKGROUND

      This background is mostly drawn from the decision of the state court of appeals reversing the postconviction court's decision granting Vogel's motion for resentencing and reinstating his conviction. *State v. Vogel*, 2022 WI App 30 (per curiam) (table), 2022 WL 1320399.

      The victim, whom the state court of appeals pseudonymously referred to as Mary, installed the KIK app on her iPad, which allowed her to exchange texts and pictures with other

people. After posting a Craigslist add titled "Need dick ASAP," Mary exchanged sexually explicit pictures with Vogel, representing that she was 18 and arranging for Vogel to meet her for oral and vaginal sex. *See id.* ¶ 3; Dkt. 12-1. In fact, Mary was 11 years old.

Vogel picked up Mary from her house and drove to a location about a mile away. *Vogel*, 2022 WI App 30, ¶ 4. Vogel began to kiss and undress Mary, using Mary's iPad to record the encounter. *Id.* When Vogel pushed his fingers into Mary's vagina, she told him that she "no longer wanted to do this." *Id.* Vogel told Mary that she was going to do it because he had driven from Minnesota to Wisconsin, and he then forced Mary to perform oral sex on him and vaginally raped her. *Id.* After dropping off Mary at her house, Vogel texted her that he "could tell she was young" during their earlier online exchanges. *Id.* (alteration adopted).

According to the presentence investigation report, an inmate reported that Vogel told the inmate that Vogel knew that Mary was underage but thought she was in her teens. *Id.* ¶ 5. An FBI investigation revealed that Vogel had a history, over a period of several years, of meeting both males and females online for the purpose of sexual conduct, and that he was not selective about his sexual partners based on his anonymous sexual activity with males and females. *Id.*; *see* 8-4 at 24, 34.

At Vogel's sentencing hearing, the circuit court asked the prosecutor to compare the severity of an offense of repeated sexual assault of a child by someone in a trusted relationship with the "obvious grooming and victimization" that occurred here. *Vogel*, 2022 WI App 30, ¶ 6. The prosecutor and defense counsel explained that Vogel had not groomed Mary by being nice to her or starting off with ambiguous physical contact and then escalating. *Id.* Later in the hearing, the court acknowledged that Vogel had been looking for any "hook up" online and that he had not been "particularly looking for a child" to have sex with. *Id.*; Dkt. 8-1 at 81. But

2

the court stated that no one could look at the photographs that Mary had sent Vogel before the offense and think that she was an adult. *Vogel*, 2022 WI App 30, ¶ 6. In subsequently summarizing why the court considered the offense "vicious and aggravated," the court cited the "concealed identity, the grooming, the nature of the assault, the use of technology, the recording of the event, the vulnerability of the victim." *Id.*; Dkt. 8-1 at 84.

While discussing Vogel's character, the circuit court characterized as "undesirable behavior" Vogel's "hooking up with guys and the attempts to conceal his Internet use and everything like that," which showed that the offense involved "planned action." Dkt. 8-1 at 85. The court circuit found that Vogel's habit of soliciting anonymous sex on the internet showed "anti-social cognition" and "highly risky behavior." *Vogel*, 2022 WI App 30, ¶ 7. Ultimately, the circuit court sentenced Vogel to a total term of 15 years' initial confinement followed by 20 years' extended supervision. Dkt. 8-1 at 88–90, 93.

Vogel sought postconviction relief, contending (1) that the circuit court violated due process by finding that he groomed Mary, and (2) by relying on his sexual orientation. *Vogel*, 2022 WI App 30, ¶ 8. The state conceded that it was inaccurate to describe Vogel's conduct as grooming, but it argued that the circuit court didn't rely on that characterization or Vogel's sexual orientation to determine the sentence. *See id.* The postconviction court vacated Vogel's conviction and granted a resentencing hearing. *Id.*

The state appealed. The state court of appeals reversed the postconviction court and reinstated Vogel's conviction. *Id.* ¶ 1. On claim 1, the state court of appeals concluded that the circuit court's explanation of the reasons for the sentence showed that it "had an accurate understanding of the underlying facts, regardless of the 'grooming' term it mistakenly used to characterize them." *Id.* ¶ 13. On claim 2, the state court of appeals concluded that the circuit

3

court relied on "the indiscriminate and anonymous nature of Vogel's sexual conduct, not Vogel's sexual orientation." *Id.* ¶ 17. The state supreme summarily denied review. *State v. Vogel*, 2022 WI 102, 996 N.W.2d 922.

In his petition, Vogel raises the two due process claims that the state court of appeals rejected. Dkt. 1. The state responded and Vogel replied. Dkt. 8 and Dkt. 13.

## ANALYSIS

### A. Legal standards

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no

possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers,* 584 U.S. 122, 125 (2018). Review under § 2254(d) is limited to the state-court record. *See Shoop v. Twyford*, 596 U.S. 811, 819 (2022); *Dunn v. Neal*, 44 F.4th 696, 702 (7th Cir. 2022). The petitioner bears the burden to show an error under § 2254(d), and the burden of proof under § 2254 generally. *See Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022); *Quintana v. Chandler*, 723 F.3d 849, 854 (7th Cir. 2013).

## B. The state court's application of the standards

### 1. Claim 1

Vogel contends that the circuit court violated due process by relying on materially inaccurate information to sentence him, specifically the finding that he groomed Mary. The state court of appeals rejected this claim. *State v. Vogel*, 2022 WI App 30, ¶¶ 13–14. The state court of appeals defined grooming as "deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Id.* ¶ 13 n.3. The state court of appeals concluded that Vogel failed to show that "any inaccurate belief by the circuit court that Vogel had specifically targeted the victim because of her age or 'groomed' her with gifts or other nice behavior formed part of the basis for Vogel's sentences." *Id.* ¶ 14. The court explained that "the circuit court's discussion in its entirety

5

shows that the court had an accurate understanding of the underlying facts, regardless of the 'grooming' term it mistakenly used to characterize them." *Id.* ¶ 13.

All criminal defendants have a due process right to be sentenced on the basis of accurate information. *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010). But to prevail, a petitioner must do more than to identify inaccurate information presented to the sentencing court. The petitioner must show that: (1) the inaccurate information was material; and (2) the court actually relied on the materially inaccurate information when imposing a sentencing. *Id.*

The state court of appeals' rejection of claim 1 was reasonable. Apart from using the term grooming, the circuit court said nothing to indicate that it thought that Vogel committed conduct that would count as grooming. The circuit court did not say that Vogel desensitized Mary by treating her kindly, showering her with gifts, or engaging in ambiguous physical contact. *See* Dkt. 81 at 76–90. The prosecutor and defense counsel explained that Vogel had not groomed Mary; the narrative provided was that Vogel showed up at Mary's home in the middle of the night, took her to another location, and treated her "like a piece of meat" by forcefully raping her. *See id.* at 44–47, 65. Along similar lines, the circuit court acknowledged that Vogel had not been "particularly looking for a child" to have sex with. *Id.* at 81. Vogel stresses that the circuit court expressly said that Vogel was involved in "grooming" when pronouncing the sentence, but the court's mere erroneous word choice does not show that it relied on a finding that Vogel groomed Mary. *Cf. Lechner v. Frank*, 341 F.3d 635, 640 (7th Cir. 2003) (sentencing court's mere mention of information does not show that the court relied on that information to sentence the defendant). The sentencing transcript supports the state court of appeals' finding that the circuit court understood the underlying facts and merely misspoke. Claim 1 lacks merit.

6

### 2. Claim 2

Vogel contends that the circuit court violated due process by sentencing him based on constitutionally protected conduct, i.e., consensual sexual activity with adult men. Put differently, Vogel contends that the circuit court relied on his sexual orientation to sentence him even though that factor was irrelevant to punishment. Vogel relies primarily on two Supreme Court cases to support claim 2: *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Dawson v. Delaware*, 503 U.S. 159 (1992). *See* Dkt. 1 at 5; Dkt. 13 at 11.

The state court of appeals accepted the parties' stipulation that discrimination based on gender or sexual orientation was an improper sentencing factor. *See Vogel*, 2022 WI App 30, ¶ 16. But the court concluded that Vogel failed to show that the circuit court sentenced him based on his sexual orientation. *See id.* ¶ 17. The court reasoned that the circuit court's "comments about Vogel hooking up with guys and attempting to conceal his identity online [could] be fairly interpreted as referring to Vogel's history of indiscriminately engaging in sex with anonymous partners of either gender as being highly risky, rather than being negatively focused upon his interactions with men in particular." *Id.* The court explained that the "conduct bore a nexus to the charged crime—which involved having sex with a minor whom Vogel met by using an alias on the internet—as well as Vogel's risk of reoffending." *Id.* "In other words, it was the indiscriminate and anonymous nature of Vogel's sexual conduct, not Vogel's sexual orientation, that was of concern to the court." *Id.*

The state court of appeals' rejection of claim 2 was reasonable. At sentencing, the prosecutor discussed Vogel's use of "an alias and email address . . . to navigate his way through . . . porn and hookup websites to meet people for . . . fleeting and anonymous sex." Dkt. 8-1 at 24. The prosecutor argued that Vogel had "undesirable behavior patterns," partly because

7

he was "hooking up with people left and right" *Id.* at 39. The prosecutor added that Vogel was having "anonymous sex with anyone at any time including male hookups with alias names." *Id.*

While pronouncing the sentence, the circuit court mentioned that Vogel was involved in sexual activity with men only once, and in passing. When discussing Vogel's "undesirable behavior," the court said: "[T]hat's where all this other stuff comes up about him hooking up with guys and the attempts to conceal his Internet use and everything like that." *Id.* at 85. In context, this statement is best understood to express agreement with the prosecutor's earlier remarks about Vogel's pattern of anonymous, indiscriminate sexual activity. The circuit court's use of the expressions "all this other stuff" and "everything like that" indicate that this statement was not narrowly focused on Vogel's sexual orientation, but meant to make a broader point about Vogel's risky behavior. The prosecutor also said that Vogel's activity included "male hookups." But the full context of her remarks indicates that she was emphasizing Vogel's secretive and undiscriminating behavior, not his involvement in homosexual or bisexual activity. Also, the prosecutor and circuit court did not mention Vogel's sexual activity with men every time his past sexual behavior was discussed, *id.* at 24, 39, 81, and no direct reference was made to his sexual orientation (e.g., calling him gay or bisexual). In short, the record supports the state court of appeals' determinations that the circuit court was concerned about only the indiscriminate and anonymous nature of Vogel's sexual conduct, and that he failed to show that the circuit court sentenced him based on his sexual orientation. *See Vogel*, 2022 WI App 30, ¶¶ 16–17. Claim 2 lacks merit.

CERTIFICATE OF APPEALABILITY

Because Vogel seeks relief under § 2254, he may appeal this order only if he obtains a certificate of appealability. I may issue a certificate of appealability only if Vogel makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, he "must demonstrate that reasonable jurists would find [my] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 474 (2000). Vogel cannot make this showing, so I will deny a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Jacob D. Vogel's habeas petition, Dkt. 1, is DENIED.

2. A certificate of appealability is DENIED.

3. The clerk of court is directed to enter judgment and close the case.

Entered September 16, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge